## IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| **PATRICIA KILBY-ROBB** ) <br> **17001 SUMMERS LANE** ) <br> **BADEN, MD 20613** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **MARGARET SPELLINGS,** ) <br> **SECRETARY, U.S. DEPARTMENT OF** ) <br> **EDUCATION** ) <br> **400 MARYLAND AVE., SW** ) <br> **WASHINGTON, D.C. 20202** ) <br> ) <br> **Defendant.** ) <br> ) | **Case No.:** <br><br> **Jury Trial Demand** |

## COMPLAINT

Comes Now the Plaintiff, Patricia Kilby-Robb, by and through counsel, and sues Defendant Margaret Spellings, Secretary, U.S. Department of Education and for her Complaint states as follows.

### Jurisdiction and Venue

1.  This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. Section 1331 in that the subject matter arises under the laws of the United States.

2.  Venue is proper in this court pursuant to 28 U.S.C. Section 1391(b) in that all or some events or omissions giving rise to Kilby-Robb's claims occurred in this judicial district and Defendant may be found in this judicial district.

**Parties**

3.      Patricia Kilby-Robb is a citizen of the United States and a resident of the State of Maryland.  At all pertinent times, Defendant employed Kilby-Robb as a GS-13 Program Officer with the U.S. Department of Education.

4.      Defendant Margaret Spellings is the Secretary for the U.S. Department of Education and is sued in her official capacity.  Plaintiff's complaint concerns the actions of John Fiegel and Steve Brockhouse.

**Facts**

5.      Plaintiff Patricia Kilby-Robb, an African American female, has been an Education Program Specialist-GS 13/10 at the U.S. Department of Education since July 2000 in the GOALS 2000 School/Support and Technology Programs.  She remained in that position until December 16, 2002 when she became the Acting Parental Information and Resource Center (PIRC) Team Leader.

6.      Prior to her work at the Department of Education, Plaintiff served as a principal in the District of Columbia public schools and supervised and educated teachers, custodians, counselors, special subjects staff members, psychologists and volunteers, administered an instructional program, developed and submitted reports, adhered to District rules, regulations, codes and policies, and coordinated parent and community activities for more than 20 years.

7.      In December 2002, Plaintiff was appointed to serve in an acting capacity as the PIRC Team Leader position, which was formerly held by Daisy Greenfield (GS-l4).  Ms. Greenfield refused/failed to transfer to the Office of Innovation and Improvement when the Parental Information and Resource Center program was moved

2

under the Office of Innovation and Improvement (OII) from the Office of Elementary and Secondary Education (OESE). Plaintiff was informed by John Fiegel, Caucasian male, and the Director of Parent Options and Information (POI) program in OII, that she would act in the position until the position was advertised. He first informed Plaintiff of this assignment in August 2002 in a private meeting and again stated this in a meeting in January 2003 with the PIRC Team. The PIRC team consisted of Plaintiff, James Guitard, an African American male, and Rachael Couch, an African American female. During the initial team meeting, Plaintiff requested that Rachael Couch, (GS-12), be moved into her GS-13 position, so Plaintiff would not have to not only assume the GS-l4 duties and continue all of her GS-13 assignments.

8.  Agency management did not fill Plaintiff's GS-13 position, so Plaintiff continued to execute her duties and responsibilities as a GS-13 as well as perform other duties that should have been completed by other team members. The Plaintiff carried the responsibility of not only the GS l4 and 13 positions but also assumed responsibility for employees that failed or refused to work. James Guitard had been removed from the team twice and was not active during the transfer but was added to the team for purposes of the transfer to OII to move him out of the SSTP/OESE program.

9.  As the team leader, it became Plaintiff's responsibility to take the lead for every assignment. There was no organization/supervision for the PIRC team separate from that provided by the Plaintiff. She had the same duties as other team leaders, who were employed at the GS-14 level, and she was given mandatory assignments usually given to GS-14 employees. Steve Brockhouse (GS- 15) (Caucasian male), the named Assistant Director for POI, was identified by John Fiegel as the supervisor but he did not

3

have any experience/expertise with the PIRC program. He had not worked with the PIRC program in the past. He depended on Plaintiff to set the agenda for all meetings, and conduct and attend the Regional Institutes as well as the national conferences. Plaintiff was responsible for the activities for all 90 to 102 PIRCs. Plaintiff provided the history to Brockhouse and informed him of what had to be done to effectively carry out the PIRC program. Plaintiff worked ten to twelve hour work days and worked many days long after her tour of duty ended. Plaintiff was held out as the resident expert for the PIRC program.

10. There was little or no organization or supervision outside of Plaintiff's leadership for the PIRC program. There was no implementation of the formal EDPAS process nor was Plaintiff given any training/information on the EDPAS process. Plaintiff was given a list of duties and performance areas and told to sign and return the EDPAS statement. No other options for clarifications were provided. Neither Fiegel nor Brockhouse ever informed Plaintiff that she was performing less than "outstanding."

11. During a meeting in March 2003, Plaintiff gave John Fiegel a list of the personnel standards for a Team Leader. Plaintiff performed the same duties as Madeline Baggett, Program Lead (GS- 14), Caucasian female, and Diane Austin, Program Lead (GS-14), Caucasian female. Plaintiff did not receive any acknowledgment or feedback for time on task/amount of time for major areas of accomplishment or quality and/or quantity of work in completing assignments from John Fiegel or Steve Brockhouse.

12. In preparation for the evaluation process, Plaintiff assembled a list of her accomplishments for the rating period but the list was incomplete because she had to leave the office due to the illness and subsequent death of her father. Plaintiff became ill

in April 2003 and was hospitalized. Plaintiff was diagnosed with hyperthyroidism with a myriad of symptoms including serious life-threatening heart condition. Plaintiff received a chronic diagnosis at the time of hospitalization but had to follow-up with testing-scans-biopsies. From the results of the biopsy, Plaintiff was informed that she had nodules with abnormal cells. Plaintiff's medical team had to determine the best treatment and she has been undergoing treatment since that time. After much deliberation, it was determined that surgery would be postponed due to her unhealthy physical state and the nature of thyroid disease. Plaintiff called John Fiegel from the hospital and in a follow-up meeting with Steve Brockhouse explained in great detail her health condition. Plaintiff informed Steve Brockhouse that her medical team warned against stress and being overworked. Brockhouse laughed. Brockhouse was not supportive of Plaintiff working from home.

   13.  In May 2003, John Fiegel informed Plaintiff that since her father had just passed away, he and Steve Brockhouse would put Plaintiff's performance indicators together for the evaluation. In June 2003, Plaintiff reported to her evaluation conference with John Fiegel and Steve Brockhouse. Brockhouse later joined the evaluation. Plaintiff was issued a satisfactory performance evaluation. Fiegel indicated that Brockhouse agreed on this evaluation. Plaintiff's evaluation justification only contained the short list of accomplishments that Plaintiff had sent in an e-mail to Steve Brockhouse, prior to her taking leave. Plaintiff was evaluated based on a partial list of accomplishments after Fiegel failed to present an accurate statement of Plaintiff's accomplishments. Plaintiff was denied the opportunity to complete the documentation of her work.

14. During the evaluation conference, Steve Brockhouse sat with his arms folded in an intimidating manner but was mute. When John Fiegel made incorrect statements, Plaintiff turned to Steve Brockhouse and asked him to bring clarification to the evaluation. Steve Brockhouse would not respond. Plaintiff became distraught at the meeting because she had worked well beyond the "call of duty," and based on Steve Brockhouse's encouragement and urging, Plaintiff served as the leader, approved and made decisions for the PIRC program, made changes that elevated the program and Department of Education colleagues.

15. Before Plaintiff received her evaluation, she had only received compliments for her performance, especially the New Grantee Orientation which was held in March 2003. After this conference, many Department of Education employees asked her for assistance because the program was so well received.

16. Upon information and belief, Agency management reserved high evaluations for those employees in the higher grades and Caucasian employees. Plaintiff's team, with all African Americans, had never worked with Fiegel or Brockhouse, nor was it valued for its contributions to the program. In POI, the all African American Team all received satisfactory evaluations regardless of performance, while Caucasian employees on other teams received higher evaluations.

17. Plaintiff was informed by John Fiegel that Steve Brockhouse deserved the credit for the PIRC program and the work Plaintiff accomplished. Another African American female, Iris Lane had difficulty working with Steve Brockhouse, and refused to work with him because he would not evaluate her based on her performance. Joan Scott-Ambrosio also complained that she would not work with Brockhouse.

18. In June 2003, John Fiegel repeated his intent to submit a request to personnel for his two senior staff members (African American females) to receive compensation for the GS-14 position, Iris Lane for Voluntary Public School Choice program and Plaintiff for the PIRC program. John Fiegel gave Plaintiff a satisfactory rating, but he did not view Plaintiff as just a satisfactory employee, because he promised to submit the position description for the PIRC Team Leader position.

19. Plaintiff refused to sign her evaluation in June 2003. Less than two weeks after Plaintiff refused to sign her evaluation, on June 28, 2003, Steven Brockhouse sent an email while Plaintiff was attending a PIRC Institute warning her for using very poor judgment which constituted unsatisfactory performance with respect to both effective communication and working cooperatively achieve the goals of the organization.

20. After Plaintiff refused to sign her evaluation, Fiegel said he was not going to submit the paperwork for the GS-14 PIRC Team Leader position. Fiegel commented that everyone else was satisfied with their evaluation except Plaintiff. In August 2003, in a fit of anger, Fiegel said he was not going to talk to Plaintiff about it anymore.

21. In August 2003, Plaintiff submitted an application for telework. Plaintiff did not receive the signed copy until October 2003. The contract indicated that Plaintiff needed a computer to telework and it was assigned. John Fiegel and Margo Anderson failed or refused to respond to the request for a computer. Michael Petrilli finally responded and said Plaintiff would not receive a computer.

22. In Plaintiff's discussions with Steve Brockhouse, she told him due to her health condition, she needed certain accommodations to execute her duties and responsibilities because she was at the Department of Education for 10 to 12 hours a day

7

and still had to go in on weekends. Brockhouse signed the papers because Plaintiff kept asking him to work from home during her disability and recuperative period and by that time Plaintiff had become visibly ill. In a conversation, John Fiegel said he did not know anything about the Family and Medical Leave Act or the telework policies due to a medical disability. Plaintiff asked him to please check on it for her, but he did not provide any follow-up information.

23. Despite the health warnings, Plaintiff was put in a position to serve as a Competition Manager for the PIRC grant application review, another major responsibility for the GS-14 position. Plaintiff also coordinated all of the PIRC Institutes, in-depth working sessions for the PIRC program. This program was held in New Orleans and Plaintiff had a major role in the presentation, performance report development and technical assistance meetings.

24. In 2005, Plaintiff was informed that she was not the acting PIRC team leader. Before the removal of her duties, Fiegel met with Nina Rees and the Plaintiff in December 2004 and Fiegel told Plaintiff that he did not like her and he wanted her out of his program.

25. Plaintiff has exhausted all administrative remedies prior to filing suit.

## Count I

### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. Section 2000e-2(a)

Plaintiff realleges and incorporates the allegations of all paragraphs above as if fully set forth herein.

26. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any

8

individual, or otherwise to discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex, age, national origin, marital status; or to limit, segregate, or classify his employees or applicants for employment opportunities or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, age, or national origin.

27. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a).

28. At all pertinent times, Ms. Kilby-Robb was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a).

29. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. Section 2000e-2(a), Defendant knowingly and intentionally engaged in unlawful discrimination, including but not limited to subjecting Plaintiff to disparate treatment in terms, conditions and privileges of employment. Plaintiff was required to perform the duties of a GS-14 employee as well as her GS-13 permanent assignment, without additional compensation; Plaintiff was required to perform the duties of a PIRC team member who refused to perform his assignments; Plaintiff was required to perform the duties of GS-14 staff members and Caucasian employees at this level were given recognition and higher performance evaluations for the same or less work; Plaintiff was issued and required to perform a disproportionate amount of work; Plaintiff received a discriminatory evaluation; and Plaintiff was subjected to a hostile work environment based on her race and gender.

30. The conduct of Defendant, by and through the conduct of its employees and/or agents, deprived Plaintiff of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a).

Wherefore Plaintiff prays that the court will:

A. Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a);

B. Enjoin Defendant from discriminating against employees who report discriminatory practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a);

C. Grant Ms. Kilby-Robb compensatory damages, including back pay and front pay and all lost benefits against Defendant;

D. Award payment of all fees, costs, expenses, including attorney's fees and expert fees;

E. That the Court award Ms. Kilby-Robb such other relief as to which she may be deemed entitled.

Respectfully submitted,

David A. Branch #438764
Law Offices of David A. Branch, PC
1825 Connecticut Avenue, NW #690
Washington, D.C.  20009
(202) 785-2805

**JURY TRIAL DEMAND**