```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


PATRICA KILBY-ROBB,                )
17001 Summers Lane                 )
Baden, MD  20613,                  )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )   Civil No. 05-2270 JDB
                                   )
MARGARET SPELLINGS, SECRETARY.     )
  UNITED STATES DEPARTMENT         )
  OF EDUCATION,                    )
  400 Maryland Ave., S.W.          )
  Washington, D.C. 20200,          )
                                   )
        Defendant.                 )
_____)
```

ANSWER

Defendant Margaret Spellings, Secretary, United States Department of Education, by her undersigned attorneys, hereby answers the Complaint as follows:

FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

SECOND DEFENSE

Plaintiff has failed to exhaust her administrative remedies on all the claims raised in the Complaint.

THIRD DEFENSE

In response to the numbered paragraphs of the Complaint, defendant admits, denies or otherwise avers as follows:

## JURISDICTION AND VENUE

1. This paragraph is a jurisdictional statement to which no response is required. If an answer is deemed required, jurisdiction is not contested.

2. This paragraph is a statement of venue to which no response is required. If an answer is deemed required, venue is not contested.

## PARTIES

3. Admit.

4. Admit, except to aver that plaintiff's complaint concerns actions taken by individuals other than only John Fiegel and Steve Brockhouse.

## FACTS

5. Admit, except aver that December 16, 2002 was the effective date for the creation of the Office of Innovation and Improvement ("OII"), to which plaintiff was involuntarily reassigned effective December 29, 2002, and that a more correct terminology of title for one of Plaintiff's assigned duties in OII was Acting Team Lead, Parental Information and Resource Center ("PIRC").

6. Admit that plaintiff was a principal within the District of Columbia Public Schools ("DCPC") system prior to her employment with defendant, but deny that plaintiff was of that

rank for more than 20 years.

    7. Deny that Feigel had a private meeting with plaintiff in August 2002. Admit the Fiegel met with the PIRC team members on October 31, 2002 to discuss possible organizational assignments. Admit further that plaintiff was assigned the duties of acting as the Team Lead for the PIRC Team. Defendant denies that this assumption of duties was of the same level of responsibilities as that accorded to Ms. Greenfield, who performed the PIRC Team Leader duties along with other duties, which were grade-determinative, while the PIRC Team Lead's were not. Defendant denies that Ms. Greenfield ever refused or failed to transfer to OII from the Office of Elementary and Secondary Education ("OESE"). Ms. Greenfield simply was never chosen for such an involuntary reassignment transfer to OII. Defendant admits that John Fiegel, Director, Parent Options and Information ("POI") Program, OII, asked plaintiff to assume the "lead" for PIRC matters, but denies that he assigned her the corresponding lead supervisory responsibilities for that area, which instead were assigned to Steve Brockhouse, who also assumed the same duties over Magnet Schools Assistance Program. Defendant does not deny that plaintiff may have suggested that Rachel Couch be given a promotion to the GS-13, just as plaintiff suggested that plaintiff be promoted to the grade 14.

8. Admit that defendant did not fill plaintiff's GS-13 position and aver that plaintiff occupied it herself. Further admit that since OII was created to house the discretionary grants that were within OESE, there was a period of transition in which everyone needed to help to complete the assigned tasks of the newly formed organization. Deny that plaintiff was doing GS-14 level work. Deny that Guitard was placed on the OII's PIRC team to "move him out of the SSTP/OESE program." Admit that Mr. Guitard was on the PIRC Team, SSTP, OESE, and that when a particular program or function, such as PIRC, was shifted over to OII, individuals such as Guitard often were reassigned to OII, when the December 2002 reorganization became effective.

9. Admit that plaintiff acted as the programmatic lead for the PIRCs. Deny that plaintiff was the designated supervisory leader for the group, and aver that POI Deputy Steve Brockhouse held that position. Deny that there was a lack of organizational or supervisory leadership provided to the PIRC team and that plaintiff has the same duties as other "team leaders, who were employed at the GS-14 level," and "was given mandatory assignments usually given to GS-14 employees." Admit that Brockhouse lacked certain experience or expertise with the PIRC, but aver that his recognized stature and expertise in the discretionary grant area made him readily qualified to be the

4

Deputy, POI, and assigned supervisory lead for the PIRC function. Admit that plaintiff functioned as the lead expert for PIRC matters and that she did work long hours on the program, but aver that the long hours were not required of plaintiff. Deny the remainder of this paragraph.

10. Deny that there was a significant absence of organization or supervision within the PIRC program, and aver that it was plaintiff's efforts at making more than what was there regarding her "lead" position that tended to cause friction and more work among POI personnel. Deny that plaintiff was not given any formal training respecting the new annual performance evaluation system by OII officials, and aver that plaintiff was treated no differently in this regard by Fiegel and Brockhouse than anyone else, for such orientation and training of that nature was a departmental task assigned to the Office of Management. Admit that Fiegel and Brockhouse did not provide plaintiff with any type of notice that her performance was less than outstanding and aver that such notice was not required unless an employee's performance is at an unsuccessful or unsatisfactory level, which plaintiff's was not during the time in question.

11. Admit that plaintiff may have provided Fiegel with a list of personnel standards of a Team Leader. However, deny

that plaintiff's assigned duties and her quality of work was of the same level as Ms. Baggett's and Ms. Austin's. Further deny that Ms. Austin is a Caucasian female. Defendant does not deny that Fiegel and Brockhouse did not provide the type of feedback that plaintiff expected during the very short four-month initial performance evaluation period, of which plaintiff was absent for almost a whole month due to her own illness and then her father's death.

12. Defendant does not deny that plaintiff's sudden departure from the office due to her own illness and her father's death caused her to not provide a complete list of accomplishments to her supervisors. Admit that plaintiff's father became ill in December 2002, and did pass away in early May 2003. Further admit that plaintiff went to the hospital for a serious medical condition on April 8, 2003, and that she returned to the office on April 14, 2003. Deny that both Fiegel and Brockhouse ever penalized plaintiff for not being able to work due to medical problems or her father's illness and subsequent death or disallowed her to take approved leave for absences supported with sufficient evidence. Deny that defendant was on notice as to what precisely plaintiff's medical condition was, and aver that plaintiff acted in an elusive manner to hide information about her condition from others and also because

plaintiff at times was unaware what course of treatment her own medical team would take.  Further aver that it was not until October 31, 2003, that plaintiff was diagnosed with hyperthyroidism, and that plaintiff identified herself as a person with a "temporary medical disability" when she made an "as-needed" flexiplace request of August 4, 2004.  Admit that defendant subsequently learned from its Medical Review Officer that plaintiff was not medically fit to work from the first few days in April through early May 2003 due to her hyperthyroid condition, but aver that plaintiff's own treating physician refused to endorse a request by plaintiff for six months off around September 7, 2003, since such an absence was not medically related to her thyroid condition.  Deny that Brockhouse ever laughed at or about plaintiff's medial condition(s) or that he was not supportive of her request to work at home, and aver that Broackhouse and Fiegel endorsed such a request by her.

13.  Admit except to aver that Fiegel based his rating of plaintiff's work also on his observation of her three months of work and feedback from Brockhouse.  Deny that the evaluation was based on an inaccurate assessment of plaintiff's accomplishments during the relevant time period, and aver that Fiegel rated plaintiff high on areas in which she performed well and that her overall rating was on the high side of a successful.

14. Admit that Brockhouse may have been silent during plaintiff's evaluation meeting but deny that he was acting in an intimidating manner toward plaintiff. Further deny that Fiegel made incorrect statements. Defendant lacks knowledge or information sufficient to form a belief as to whether plaintiff felt distraught about her working long hours to serve the PIRC community, but aver that plaintiff's rating reflected her work and accomplishments as the acting PIRC team lead and her efforts as the Contract Officer Representative.

15. Admit that plaintiff performed well her PIRC activities.

16. Deny, except to admit that Fiegel and Brockhouse never had previously worked with members of the PIRC team.

17. Deny, except to admit that some subordinate employees, such as Iris Lane, complained that Brockhouse was difficult to work with and were not inclined to work with him.

18. Deny that Fiegel made representations that he would work to obtained noncompetitive promotions for Lane and plaintiff, and aver that Fiegel stated that he would make efforts to see if positions for those two areas could be justified and upgraded to the 14 level. Deny that Fiegel's determination to rate plaintiff's performance as satisfactory was inaccurate or inconsistent with his effort to justify the upgrading of the PIRC

Team Leader position and aver that the two items are separate propositions.

19. Admit that plaintiff refused to sign her performance evaluation in June 2003, and that Brockhouse sent an email communication to plaintiff asking her to be more careful about referring all phone calls and email messages to him when she is absent without first checking with him about such a referral.

20. Deny that Fiegel refused to submit paperwork for the upgrade of the PIRC Team Leader position because plaintiff refused to sign her performance evaluation. Admit that Fiegel made a comment that everyone else was satisfied with their ratings but plaintiff, but deny that Fiegel said in a fit of anger that he was not going to talk to plaintiff about her successful rating anymore and aver that in August 2003, Fiegel recommended plaintiff for a cash award for her performance during the rating period in question.

21. Admit that plaintiff submitted a work-at home agreement and that she needed a personal computer to do so, but deny that Fiegel opposed such a request and aver that he and Brockhouse endorsed this request. Admit that Margo Anderson, the Executive Officer, OII, not Michael Petrrilli, turned down plaintiff's request for use of an assigned PC and aver that this decision was based on economic considerations.

22. Admit that plaintiff discussed some of her health situation with Brockhouse and that Brockhouse did endorse her work-at-home request for a PC.  Defendant also admits that Fiegel was somewhat aware of plaintiff's health conditions and aver that Fiegel also endorsed plaintiff's request for a PC for home usage.  Deny that working at home was viewed as a reasonable accommodation since plaintiff at the times in question was too ill to work at home or at the office.  Admit that Fiegel had a conversation with plaintiff about how the Family Medical Leave Act or a telework agreement might be an effective tool if a medical disability was discerned.  Deny that any substantive discussions on point occurred and aver that plaintiff was evasive in discussing her medical situation and did not approach Fiegel about obtaining a PC for home usage from that perspective but only sought to be able to work at home to make her life less stressful at that time.

23. Deny that plaintiff provided adequate health warnings and that plaintiff was denied the right to take time off when she was ill or in need of treatment.  Admit that plaintiff worked extensively on the PIRC grant application review or with the various PIRC Institutes.

24. Admit that plaintiff was told in February 2005 that she was no longer the PIRC Team Leader, and aver that defendant

dissolved the team concept not just for PIRC but for other groups, so that there was no need for a team leader designation for PIRC or any other group.

    25.   This paragraph is a statement of law, to which no response is required.  If an answer is deemed required, denied.

## COUNT I

    Defendant realleges her answers as if set forth in full herein.

    26.- 28.  These paragraphs contain statements of law, to which no responses are required.  If answer are deemed required, denied.

    29.- 30.  Deny.

## REQUEST FOR RELIEF

    The remainder of the Complaint consists of a prayer for relief, to which no response is required.  To the extent that a response might be necessary, defendant denies that plaintiff is entitled to the relief requested or to any relief whatsoever, and also denies each and every allegation not previously admitted, denied, or otherwise qualified.  Defendant further avers that any award of compensatory damages would be subject to and limited by

42 U.S.C. § 1981a.

        Respectfully submitted,

        _____
        KENNETH L. WAINSTEIN, D.C. BAR # 451058
        United States Attorney

        _____
        R. CRAIG LAWRENCE, D.C. BAR # 171538
        Assistant United States Attorney

        _____
        MARINA UTGOFF BRASWELL, D.C. BAR #416587
        Assistant United States Attorney
        U.S. Attorney's Office
        555 4th Street, N.W. - Civil Division
        Washington, D.C. 20530
        (202) 514-7226