UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA KILBY-ROBB,                    )
                                        )
          Plaintiff,                    )
                                        )
          v.                            )      Civil No. 05-2270 (JDB)
                                        )
MARGARET SPELLINGS, SECRETARY           )
  OF EDUCATION,                         )
                                        )
          Defendant.                    )
_____)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Margaret Spellings, Secretary, by her undersigned counsel, respectfully moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting defendant summary judgment on the grounds that no genuine issue of material fact exists and defendant is entitled to judgment as a matter of law.  In support of this motion, the Court is respectfully referred to the accompanying statement of material facts, the memorandum of points and authorities, the exhibits, and the testimony of individuals with personal knowledge of the facts in

question.  A proposed order is also attached.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA KILBY-ROBB,                  )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )    Civil No. 05-2270 (JDB)
                                      )
MARGARET SPELLINGS, SECRETARY         )
  OF EDUCATION,                       )
                                      )
        Defendant.                    )
_____ )

DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rule 7(h), defendant hereby submits her statement of material facts as to which there is no genuine issue:

1.  Plaintiff is an African-American female who is currently employed as an Education Program Specialist, GS 13, step 10, at the U.S. Department of Education.  Complaint, ¶ 5.

2.  In 2002, the Department of Education created a new office entitled the Office of Innovation and Improvement [OII]. Exh. 1, attached.

3.  In 2002, the Parental and Local Family Information Centers [PIRCs] were transferred to the jurisdiction of OII's Parental Options and Information [POI] area, headed by John Fiegel.. Exh. 7 at ¶ 1; Complaint, ¶ 7.

4.  The employee serving as the Team Leader for the PIRCs prior to the transfer of the PIRCs to OII was Daisy Greenfield.

Exh. 6, Deposition of Daisy Greenfield, attached, at 36-38.

    5.  Ms. Greenfield did not transfer to OII when the PIRCs did.  Id. at 10.

    6.  Plaintiff was transferred to OII and asked to take on the duties of acting Team Leader for the PIRC team.  Exh. 5, Deposition of John Fiegel, attached, at 14.

    7.  Team leader responsibilities were not supervisory in nature.  Id. at 16, 29.

    8.  Plaintiff never requested a desk audit until 2006.  Exh. 14, Deposition of Patricia Kilby-Robb, attached, at 37.  The audit has not yet occurred.  Id.

    9.  Plaintiff received a "Successful" performance rating for the period of January 1 through April 30, 2003.  Exh. 12, attached.

    10.  Two Caucasian employees in OII also received "Successful" performance appraisals for the same period.  Exh. 7, attached, at ¶ 7.

    11.  In August 2003, plaintiff received a cash award of $500.00.  Exh. 13.

                      Respectfully submitted,


                        _____
                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                        United States Attorney


                        _____
                        RUDOLPH CONTRERAS, D.C. BAR # 434122

Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA KILBY-ROBB,               )
                                   )
          Plaintiff,               )
                                   )
     v.                            )    Civil No. 05-2270 (JDB)
                                   )
MARGARET SPELLINGS, SECRETARY      )
  OF EDUCATION,                    )
                                   )
          Defendant.               )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Preliminary Statement

Plaintiff, an employee of the United States Department of Education, filed suit under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. claiming that she was subjected to disparate treatment in the terms, conditions and privileges of her employment.  Specifically, plaintiff alleges that: (1) she was required to perform the duties of a GS-14 employee, and certain duties of a colleague, as well as her GS-13 permanent assignment, without additional compensation; (2) she received a discriminatory performance evaluation; and (3) she was subjected to a hostile work environment based on her race and gender.

Defendant is entitled to summary judgment on plaintiff's claims.  Plaintiff was never given additional assignments that were considered grade-controlling duties for a GS-14 position –

2

i.e., duties that would require the individual performing them to be at the GS-14 level.  Rather, for a period of time plaintiff was asked to perform certain leadership duties for a team she was on.  Contrary to plaintiff's claim, she can point to no other individual who was similarly situated to her who was paid at a higher level than she was for performing similar types of duties.  Plaintiff's mere belief that she should have been paid more for certain additional duties she was temporarily asked to perform fails to give rise to any inference of discrimination.  Rather, such a decision was comfortably within the Department of Education's prerogative to manage its employment affairs, and plaintiff cannot show any evidence of pretext.

      The same is true with respect to plaintiff's performance appraisal.  She was rated under a new performance appraisal system and received a "Successful" appraisal.  Plaintiff offers no evidence that this rating raises an inference of discrimination.

      Finally, plaintiff's hostile work environment claim should also be dismissed.  This claim rests upon plaintiff's allegation that she was assigned additional duties, that her performance in 2003 was not properly recognized, and that she was admonished not to forward calls to a supervisor when she was going to be out of the office.  These actions, even if true, hardly constitute the kind of pervasive intimidation, ridicule and insult that must be

shown to sustain a hostile work environment claim.

Accordingly, for the reasons set forth in this memorandum and accompanying exhibits, defendant respectfully submits that she is entitled to summary judgment.

FACTUAL BACKGROUND

Plaintiff's claims grow out of her employment in the Department of Education's Office of Innovation and Improvement [OII}, a new office created within the Department in 2002. As explained on the Department's website:

> The Office of Innovation and Improvement ["OII"] is a nimble, entrepreneurial arm of the U.S. Department of Education. It makes strategic investments in innovative educational practices through two dozen discretionary grant programs and coordinates the public school choice and supplemental educational services provisions of the Elementary and Secondary Education Act as amended by No Child Left Behind. It also serves as the Department's liaison and resource to the nonpublic education community and oversees the Family Policy Compliance Office. The Office helps to develop guidance on provisions and programs related to its work under No Child Left Behind.

Exh. 1, attached.

OII came about when then-Secretary of Education Roderick Paige decided to streamline the organizational structure of the Department. He tasked Deputy Secretary William Hanson and Hanson's Special Assistant (Michael Petrilli) with that effort. See Deposition of Michael Petrilli [Petrilli Dep.], attached in relevant part as Exh. 2, at 16-17; Memo from Hanson to Berger on "Necessary Organizational Changes") (Sept. 18, 2002), attached as Exh. 3.

4

During the relevant time period OII was headed by Assistant Deputy Secretary Nina S. Rees, who was assisted, among others, by Michael Petrilli, her Associate Assistant Deputy Secretary.  Exh. 2, Petrilli Dep. at 11; Deposition of Nina S. Rees [Rees Dep.], attached in relevant part as Exh. 4, at 6.  Rees, an SES employee, and Petrilli, a GS-15, who were both political appointees, laterally transferred into their positions, as did many others with the OII staff.  See Exh. 2, Petrilli Dep. at 7, 16-18; Exh. 4, Rees Dep. at 6.  Many of the discretionary grants were shifted to OII from the larger and more well-established Office of Elementary and Secondary Education [OESE].  OESE kept what is known as the non-competitive or state-formula grants. Deposition of John Fiegel [Fiegel Dep], attached in relevant part as Exh. 5, at 11-12; Deposition of Daisy Greenfield [Greenfield Dep.], attached in relevant part as Exh. 6, at 41-42.

The shifting over of responsibilities for the Parental and Local Family Information Centers [PIRCs] is most relevant to this case.  The PIRCs fell within the specific jurisdiction of OII's Parental Options and Information [POI] area, which was headed by John Fiegel.  POI also housed these initiatives: Public Charter Schools, Credit Enhancement Initiative to Assist Charter Schools, Voluntary Public Schools Choice, and Magnet Schools Assistance. Exh. 7, ¶ 1; Exh. 5, Fiegel Dep. at 21-22, 44-46.

When OII was created in December 16, 2002, Rees had direct

oversight of POI.  That is, Fiegel reported directly to her.
Later Rees ceded that responsibility to Petrilli, her deputy.
Exh. 2, Petrilli Dep. at 11-13; Exh. 5, Fiegel Dep. at 6-7.
Besides Fiegel, the other office directors were:  Linda Jones
(African-American female), GS-15, Fund for the Improvement of
Education Programs; Edith Harvey (African-American female), GS-
15, Improvement Programs; Cheryl Garnett (African-American
female), GS-15, Technology in Education Programs; Patricia Gore
(African-American female), GS-15, Teacher Quality Programs; LeRoy
Hooker (Caucasian), GS-15, Family Policy Compliance Office; and
Jack Klenk (Caucasian), SES, Office of Nonpublic Education.  Exh.
2, Petrilli Dep. at 21-23.

    With POI constituting the largest directorship within OII, a
deputy position was added to help Fiegel administer and supervise
persons within POI.  Steven Brockhouse, another GS-15 who also
was laterally transferred from OESE to OII, was assigned this
position.  Brockhouse was tasked with the day-to-day supervision
of the PIRC team (plaintiff, Rachel Couch and James Guitard – all
African Americans), and Magnet Schools Assistance Programs team
(Kay Wagner and Richard Kress – both Caucasians).  However, there
was a delay in processing the personnel papers officially
designating him as the POI deputy director.  These documents were
not executed until February 27, 2003.  Exh. 2, Petrilli Dep. at
26-30, 34; Exh. 5, Fiegel Dep. at 10, 17,34-35, 49-50, 75;

Deposition of Steven Brockhouse [Brockhouse Dep.], attached in
relevant part as Exh. 8, at 5, 7, 9-12, 55-57; Declaration of
Margo Anderson, Associate Deputy Assistant Secretary, attached as
Exh. 9, at 2-3.

### A.   Assignment of Duties Claim

Prior to the reorganization, the PIRC function resided with
OESE's School Support and Technological Programs and Daisy
Greenfield (African American female) (GS-14), was the designated
PIRC Team Leader.  Other members were plaintiff (GS-13)[1], Rachel
Couch (GS-12) and James Guitard (GS-12).  The official and
effective date of the plaintiff's lateral reassignment from OESE
to OII was December 29, 2002.  Exh. 5, Greenfield Dep. at 8-10;
Exh. 5, Fiegel Dep. at 10.

Greenfield was noncompetitively promoted to the grade 14 in
1997 due to an accretion of duties.  In large part this was due
to her various responsibilities and assumption of duties and
national expertise in a number of areas related to the Goals 2000
Office (later School Support and Technological Programs), within
OESE at the time.  Her work in PIRC was significant but not a
determinative factor in her grade 14 promotion, as shown in the
supporting memorandum justifying the promotion found in her
Official Personnel Folder ("OPF").  Exh. 6, Greenfield Dep. at

---

[1] Plaintiff still is an Education Program Specialist, GS-13,
step 10.  See Complaint,¶ 5.

34-39; Exh. 10, attached.  Greenfield, a highly valued member of the OESE management team was not asked or directed to leave OESE for the newly formed OII.  Exh. 6, Greenfield Dep. at 10-11.

When a particular program or function was shifted over to OII, the individuals assigned to such a program often were reassigned to OII.  The exact supervisory and managerial structure, however, was not; within OII, GS-15 program officers tended to take on lower level grade 14 duties.  Exh. 2, Petrilli Dep. at 25, 28, 31; Exh. 5, Fiegel Dep. at 13, 16, 17, 29, 75; Exh. 10, Brockhouse Dep. at 7, 15, 19, 22, 24-26, 33-35; Exh. 6, Greenfield Dep. at 11-12.  With Greenfield not there to head the PIRC team, Fiegel met with the remaining PIRC members to discuss this leadership vacuum.  Plaintiff stepped forward to be the acting PIRC team leader, which Fiegel determined was acceptable. Exh. 5, Fiegel Dep. at 10, 13, 14, 16, 28, 29, 41, 73.

Under OII management, team leader positions were not supervisory in nature -- that is, a team leader did not have authority to approve leave or sign off as a rating official. Exh. 5, Fiegel Dep. at 15-17, 29; Exh. 2, Petrilli Dep. at 31; Exh. 8, Brockhouse Dep. at 19, 22, 24.  In POI, as mentioned above, those supervisory duties went to the director (Fiegel) or to the deputy director (Brockhouse).  Thus, the title of "team leader" was not entirely accurate; rather, the term or title "team lead" was more appropriate.  That is, from a programmatic

8

stance, not a supervisory one, a team lead was just that -- a designated expert or lead for a particular grant program or project.  Exh. 2, Petrilli Dep. at 28, 30, 31, 34; Exh. 5, Fiegel Dep. at 13, 29; Exh. 8, Brockhouse Dep. at 15.

Plaintiff did not assume all of the duties performed by Ms. Greenfield that supported her promotion to the GS-14.  Plaintiff only claims to have taken on the duties of Team leader for the PIRC.  Compare Complaint, ¶ 7 with Exh. 10 & Exh. 6, Greenfield Dep. at 36-39.

### B.  Performance Evaluation Claim

At the start of the calendar year 2003, the agency adopted a new appraisal performance system ("EDPAS"), going from a pass/fail rating system to one that used Unacceptable, Minimally Successful, Successful, Highly Successful, and Outstanding as a rating scale.  The initial rating period was a shortened, transitional one of only 120 days – covering January 1 to April 30, 2003.  See Exh 11, attached, at 2, 5, 8, 10, 11, 28, 30.  As such, the belated official designation of Brockhouse as a supervising deputy director over plaintiff, Couch, Guitard, Wagner, and Kress made him ineligible as the appropriate rating officials for these persons at the end of this first and transitory rating period.  Fiegel, therefore, was the rating official.  Exh. 9, Anderson Dec. at 2-3; Exh. 5, Fiegel Dep. at 34, 49-50; Exh. 8, Brockhouse Dep. at 11-12, 55-57.

In compliance with a new agency rating appraisal system, plaintiff received her "performance plan" on January 15, 2003. Exh. 12, attached.  Her performance plan included two critical elements, organizational priorities and customer service, each having seven job specific standards.  Id.; Exh. 5, Fiegel Dep. at 79-108.

For this first transition rating period, covering January 1 to April 30, 2003, within POI, evaluations of "Outstanding" were given to three individuals (two Caucasian males and one African American female); "Highly Successful" ratings four persons (one Caucasian female and three Caucasian males); and the remaining seven employees were given a "Successful" rating.  This last group consisted of four African American females, including plaintiff and one African male (James Guitard), and two Caucasian females.  Exh. 7 at ¶ 7.

Fiegel explained that this new rating process entailed a very short or abbreviated observation period of only four months. He said that, as with all the employees whom he rated at that time, each person was asked to provide him with a list of accomplishments.  Fiegel did not blindly rely on that information but based his own ratings also on information received from Brockhouse and his own observations of the work that he knew that a subordinate had performed during the relevant period.  Exh. 7, ¶ 3; Exh. 5, Fiegel Dep. at 36, 48-50.

10

Fiegel stated that when there was little work performed as to a particular job specific element, he gave plaintiff the benefit of the doubt and rated her work a "3" (where a 1 is an unacceptable and a 5 an outstanding).  In areas that he knew that she provided some assistance but did not do the bulk of the work, he assigned her a "4."  For areas, in which she played a significant and substantial role in getting the work done, he rated her performance a "5."  This type of careful evaluation on his part included giving her due credit and recognition for her work as the acting PIRC team leader and her efforts as the Contract Officer's Representative, which the rating document reflects with such supporting statements.  In the end, his assessment of the level of work that she performed during this short period was a "high" on the Successful range for each critical element (3.83 and 3.86).  Such scores were not high enough for the threshold "4" needed for the next level, a "Highly Successful" rating.  Exh. 12; Exh.7 at ¶ 3; Exh. 5, Fiegel Dep. at 37-38, 50-55, 59, 79-80, 81, 82, 84-85, 86-90, 92-97, 98-103, 104-107, 116-119, 122-123, 124-129.

In August 2003, in recognition for plaintiff's work and contribution as the acting PIRC team leader, Fiegel recommended her for a cash award ($500.00).  Exh. 5, Fiegel Dep. at 120-121; Exh. 13, attached.  However, plaintiff's work as the acting team PIRC team leader (i.e., duties relating to being a program

officer) were at the grade 13 level and did not mandate
compensation at a higher pay level.  Exh. 8, Brockhouse Dep. at
29-30; Exh. 5, Fiegel Dep. at 16-19, 58.  Since there were no
added assignments, plaintiff's position description (and grade)
did not change or need to be changed.  Exh. 5, Fiegel Dep. at 58.

     C.  <u>Hostile Work Environment Claim</u>

     Plaintiff also alleges that she was subject to a hostile
work environment.  In particular, plaintiff alleges that
Brockhouse allegedly sent an email to contractors implying
plaintiff had failed to perform some duty.  Exh. 14, Deposition
of Patricia Kilby-Robb [Plaintiff's Dep.] at 70.  This appears to
be in connection with phone calls Brockhouse was receiving when
plaintiff was out of the office.  <u>Id</u>. at 70-73.  Plaintiff also
alleges that the additional duties she claims to have been
assigned constituted a hostile work environment.  <u>Id</u>.  Finally,
plaintiff claims that her supervisors did not appropriately
recognize her performance.  <u>Id</u>. at 77-79.

     As to plaintiff's claims concerning additional duties and
recognition of her performance, defendant has set out above the
reasons behind the actions taken.  <u>See</u> <u>supra</u> at 6-10.  With
respect to the specific issue of phone calls referred in
plaintiff's absence, Brockhouse admits that he criticized
plaintiff for referring all of her callers to him when she was
out of the office on travel.  Exh. 8 at 43.  Plaintiff did this

without consulting him and the result was that it tied up his voice mail and his time.  <u>Id</u>. at 43-44.  Brockhouse told plaintiff not to do this again without consulting him.  <u>Id</u>. at 44.

## **ARGUMENT**

I.   Defendant is Entitled to Summary Judgment
     On Plaintiff's Claims.

     A.   <u>Standard of Review</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment: "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action.  <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 327 (1986).

The party moving for summary judgment bears the initial responsibility of demonstrating the basis for his or her motion and identifying those portions of the record showing the absence of a genuine issue of material fact.  <u>Id</u>. at 323; <u>Alexis</u> v. <u>District of Columbia</u>, 44 F. Supp.2d 331, 337 (D.D.C. 1999).  To determine if the dispute about a material fact is "genuine," the

13

Court must decide whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248.  See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Alexis, 44 F. Supp.2d at 337.  The mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  See Anderson, 477 U.S. at 247-48.  The trial court must enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322; see also Alexis, 44 F. Supp. 2d at 337 ("Rule 56(c) mandates summary judgment" in this circumstance).

　　　　B.  Deference Due to Agency Decisions

　　　Before turning to the merits, a brief word is in order concerning the scope of review in employment discrimination cases.  Though plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into

review boards for local employment decisions.  The Court of
Appeals for this Circuit has made clear that "Title VII, it bears
repeating, does not authorize a federal court to become 'a super-
personnel department that reexamines an entity's business
decisions.'"  Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir.
1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464
(7th Cir. 1986)).  To the contrary, a court "may not 'second-
guess an employer's personnel decision absent demonstrably
discriminatory motive.'"  Fischbach v. District of Columbia Dep't
of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting
Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

     C.   Allocation of Burdens of Production and Persuasion

     The burden-shifting framework of McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 803-805 (1973), governs the analysis of
plaintiff's discrimination and retaliation claims.  Cones v.
Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000).  Under this test,
the plaintiff has the initial burden of proving by a
preponderance of the evidence a "prima facie" case of
discrimination.  Texas Dep't of Community Affairs v. Burdine, 450
U.S. 248, 252-53 (1981).  If the plaintiff is able to establish a
prima facie case, the burden shifts to the defendant to produce
credible evidence that his or her actions were taken for a
legitimate, nondiscriminatory reason.  Id.  The defendant's
burden is one of production, not of proof, and is satisfied if it

15

simply explains what it has done or produces evidence of legitimate nondiscriminatory reasons.  See St. Mary's Center v. Hicks, 509 U.S. 502, 509 (1993).

If the defendant meets this burden of production, the burden shifts back to the plaintiff to present evidence that the stated reason was pretextual.  Id.  A reason cannot be proved to be pretext unless it is shown "both that the reason was false **and** that discrimination was the real reason."  Hicks, 509 U.S. at 515 (emphasis added).  At all times, the plaintiff retains the ultimate burden of persuasion to demonstrate that he was in fact the victim of intentional discrimination.  Id.  Moreover, a plaintiff cannot create a factual issue of pretext based merely on personal speculation of discriminatory intent.  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).  To avoid summary judgment on the ultimate issue, a plaintiff alleging discrimination must produce some objective evidence that the asserted reason is mere pretext and that, as a result, the defendant's actions were the product of discriminatory intent. See Phillips v. Holladay Property Services, Inc., 937 F. Supp. 32, 35 n.2 (D.D.C. 1996).

> D.   Plaintiff Cannot Prove Discrimination Based on Disparate Treatment.

In order to prevail in a case pursuant to Title VII, a plaintiff must initially establish at least a prima facie case of prohibited discrimination.  McDonnell Douglas Corp. v. Green, 411

16

U.S. at 803-05; <u>Aka</u> v. <u>Washington Hospital Center</u>, 156 F.3d 1284,
1288 (D.C. Cir. 1998) (<u>en</u> <u>banc</u>) ("under the <u>McDonnell Douglas</u>
framework, the complainant must first establish a <u>prima facie</u>
case").  As a general matter, to establish a <u>prima</u> <u>facie</u> case of
disparate treatment discrimination, a plaintiff must demonstrate
by a preponderance of the evidence that (1) she is a member of a
protected group, (2) she suffered from an adverse personnel
action; and (3) the unfavorable action gives rise to an inference
of discrimination.  <u>Brown</u> v. <u>Brody</u>, 199 F.3d 446, 452 (D.C. Cir.
1999).

### A.  <u>Plaintiff's Claims Concerning Duties Performed</u>

Plaintiff's claim that she was not compensated, rewarded or
recognized for doing higher level work than her currently
assigned grade level of a GS-13 must fail.  Plaintiff can point
to no evidence that she was doing work that merited an accretion
of duties promotion to the GS-14, as was the case for Daisy
Greenfield, an African American.  Indeed, plaintiff concedes that
she did not even request a desk audit until 2006.  Exh. 14,
Plaintiff's Dep. at 37.

Plaintiff's claim in this regard is that she was serving as
the Team Leader for the PIRC Team and that some of the duties she
performed had previously been performed by Greenfield, who was a
GS-14.  Plaintiff's claim is fatally flawed, however, because she
points to no evidence that performing Team Leader duties

warranted being paid at the GS-14 level.  It is undisputed that
plaintiff was never detailed to a GS-14 position.  Exh. 5, Fiegel
Dep. at 115.  Greenfield never vacated her position, id., so
there was no GS-14 position vacated by Greenfield for plaintiff
to occupy.  Moreover, Greenfield was promoted to the GS-14 not
just based on Team Leader duties she had performed for the PIRC
before it was transferred to OII.  Exh. 10; Exh. 6, Greenfield
Dep. at 36-39.  Therefore, performing Team Leader duties for PIRC
did not entitled plaintiff to have her position upgraded to the
GS-14.  This is especially true given Brockhouse's leadership
responsibilities in this area.  Exh. 2, Petrilli Dep. at 28-35;
Exh. 8, Brockhouse Dep. at 9-10, 19-26, 33-36;  Exh. 4, Rees Dep.
at 18-19.

Additionally, plaintiff concedes that there is no comparable
employee of a different race and/or gender who was in a GS-13
level but was paid at the GS-14 level for allegedly performing
GS-14 level duties.  Exh. 14, Plaintiff's Dep. at 51.  Thus,
there is no similarly situated individual to whom plaintiff can
point who was treated differently than she was that would give
rise to an inference of discrimination.

Plaintiff also complains that she was required to perform
the duties of a team member who refused to perform his
assignments.  The team member was James Guitard, who is African
American.  Complaint, ¶¶ 7-8.  But plaintiff points to no

18

evidence that any additional duties she may have performed for
Mr. Guitard warranted her position being reclassified at the GS-
14 level.  Thus, to the extent that plaintiff did in fact
occasionally perform duties assigned to Mr. Guitard, there is no
evidence that agency managers discriminated against her by not
promoting her to the GS-14 level based on any such additional,
episodic work.  This is especially true given plaintiff's
inability to point to any Caucasian who was similarly situated to
plaintiff yet treated differently.

   B.  Plaintiff's Claim Concerning Performance Appraisal

     Plaintiff's complaint concerning her performance appraisal
similarly fails.  It is undisputed that the performance appraisal
at issue was the first one to be given to plaintiff and other
employees in her office under a new performance appraisal system.
Plaintiff's prior appraisal was simply a "pass/fail" type of
appraisal.  Exh. 14, Plaintiff's Dep. at 52.  The evaluation at
issue was the first time her supervisors had had to do a
numerical rating.  Id.

     Plaintiff concedes that everyone in her PIRC Program
received the same rating she did.  Exh. 14, Plaintiff's Dep. at
55.  She also concedes that a Caucasian in another program in OII
also received a "Successful" rating.  Id. at 55-56.  In fact, two
Caucasians in OII received such a rating.  Exh. 7, ¶ 7.
Accordingly, plaintiff cannot demonstrate that the rating she

received raises any inference of discrimination.

### C.   Plaintiff's Hostile Work Environment Claim

The Court of Appeals for this Circuit has held that "not all abusive behavior, even when it is motivated by discriminatory animus, is actionable.  Rather, a workplace environment becomes hostile for the purposes of Title VII only when offensive conduct 'permeates [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" Barbour v. Browner, 181 F.3d. 1342, 1347-48 (D.C. Cir. 1999) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998)).  General harassment, if not based on an individual's membership in a protected class, is not actionable.  See  Bolden v. PRC, Inc., 43 F.3d. 545, 550 (10th Cir. 1994).

To state a claim for harassment under Title VII, a plaintiff must allege that the harassment was pervasive or severe enough to alter the terms, conditions or privileges of employment.  See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67, 91 (1986).  In determining whether harassment rises to this level, courts should consider the frequency of the harassing conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993); see Gustave-Schmidt v. Chao, 360 F. Supp. 2d 105 (D.D.C. 2004).

The plaintiff must show "more than a few isolated incidents" of enmity based on her protected class.  See Hicks v. Gates Rubber Co., 833 F.2d 1406, 1417-18 (10th Cir. 1987).  Instead of sporadic slurs aimed at one's protected class, there must be a consistent barrage of opprobrious comments.  Id. at 1412-13, citing  Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981).  Similarly, the Court of Appeals for this Circuit has stated that "casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action under Title VII."  Bundy v. Jackson, 641 F.2d 934, 943 (D.C. Cir. 1981).

Plaintiff's claims of hostile work environment plainly fail. Her allegations that she was required to perform certain extra duties, that her performance did not receive the recognition it should have, and that she was admonished for referring callers to her boss while she was out of the office clearly do not rise to the level of a hostile work environment, as set forth in the cases cited above.

Accordingly, plaintiff's claim of hostile work environment should be dismissed.

CONCLUSION

Accordingly, for the reasons set forth above, summary judgment should be granted to defendant.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

22

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA KILBY-ROBB,                    )
                                        )
          Plaintiff,                    )
                                        )
          v.                            )    Civil No. 05-2270 (JDB)
                                        )
MARGARET SPELLINGS, SECRETARY           )
  OF EDUCATION,                         )
                                        )
          Defendant.                    )
_____)

ORDER

          Upon consideration of defendant's motion for summary
judgment, plaintiff's responding opposition, and the entire
record in this case, and it appearing to the Court that the grant
of defendant's motion would be just and proper, it is hereby

          ORDERED that defendant's motion for summary judgment is
granted; and it is further

          ORDERED that this case is dismissed with prejudice.


                              _____
                              UNITED STATES DISTRICT JUDGE



Marina Utgoff Braswell
Assistant U.S. Attorney
U.S. Attorney's Office
555 4th St., N.W.
Washington, D.C. 20530

David A. Branch, Esq.
Law Offices of David A. Branch, P.C.
1825 Connecticut Ave., NW, #690
Washington, D.C. 20009