UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA KILBY-ROBB,                )
                                    )
            Plaintiff,              )
                                    )
            v.                      )     Civil No. 05-2270 (JDB)
                                    )
MARGARET SPELLINGS, SECRETARY       )
  OF EDUCATION,                     )
                                    )
            Defendant.              )
_____ )


MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Preliminary Statement

        In this action brought under Title VII of the Civil Rights
Act, 42 U.S.C. § 2000e et seq., plaintiff claims that she was
discriminated against based upon her race and gender.
Administratively, she alleged that she was subjected to disparate
treatment when: (1) she was required to perform the GS-14 duties
in her GS-13 permanent assignment, without additional
compensation; and (2) she received a "Successful" performance
evaluation.  She also alleged that she was subjected to a hostile
work environment.  Defendant has moved for summary judgment and
demonstrated that plaintiff's claims are unsubstantiated by any
competent evidence, and that the decisions she challenges involve
legitimate management prerogatives to manage agency affairs.

        In responding, plaintiff apparently subscribes to the school
of thought holding that the filing of massive amounts of paper,
and the scattershot raising of numerous new claims, can defeat

summary judgment.  Such an attempt to mask the lack of competent evidence on the issues properly before this Court should be rejected.  Plaintiff may not attempt in an opposition brief to raise issues not timely exhausted administratively.  Furthermore, while plaintiff may believe that she performed work at the grade 14 level, and performed it in a stellar manner, plaintiff's mere conclusory self-serving opinion on the subject cannot carry the day for her.  Notwithstanding the mountains of paper she has filed, plaintiff can point to no evidence that, within the time frame of claims that can be raised in this case, she was assigned duties to perform that warranted having her position classified at the GS-14 level.  Similarly, she fails to demonstrate that her "Successful" performance appraisal stems from anything other than management's non-discriminatory assessment of the quality of her work, however much she may disagree with that assessment.

Finally, plaintiff's claims of hostile work environment fall far short of the standard she must meet.  The episodic events she points to, even if true, do not rise to the level of a hostile work environment.

Accordingly, for the reasons set forth in this memorandum and accompanying exhibits, and for those set forth in defendant's prior memorandum and exhibits filed in support of summary judgment [Defendant's Mem. and Def. Exhs.], defendant respectfully submits that she is entitled to summary judgment.

RESPONSE TO PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff's recitation of alleged facts makes it difficult to ascertain exactly what claims are properly in this case, since she appears to be complaining about events dating back as far as when she was hired by the Department of Education in 2000. See, e.g., Plaintiff's Opposition Brief [Plaintiff's Opp.], at 2, ¶ 1; at 9, ¶ 20, at 22-23, ¶ 62. However, plaintiff did not seek EEO counseling until July 26, 2003. Def. Exh. 15, attached. Moreover, the issues on which sought counseling did not include her grade at hire. Rather, she sought counseling concerning her 2003 performance appraisal, her claim she was being harassed (non-sexual), and her claim that she was performing duties previously performed by a GS-14 employee and not being compensated for them. Id. Ultimately, plaintiff filed a formal complaint of discrimination on November 25, 2003, Def. Exh. 16, attached, raising these three allegations. Any other claims, including those pertaining to bonuses, other awards or salary increases paid to other employees, see Plaintiff's Opp. at 17-19, ¶¶ 50-54, were never raised by plaintiff in her EEO counseling or formal EEO complaint and thus are not properly before this Court, as demonstrated below. See infra at 12-15.

Plaintiff spends much of her brief setting forth her assessment of the duties she performed while assigned to work on the Parental Information Resources Center [PIRC] team, previously

headed by Daisy Greenfield.  E.g., Plaintiff's Opp. at 3, ¶ 6; at 7, ¶ 17; at 28-36.  Plaintiff alleges that the work she performed on the PIRC team was the same as that performed by Ms. Greenfield, who was a GS-14, and therefore plaintiff should have been paid as a GS-14.  Id. at 37-38.

First, by plaintiff's own admission, she was not placed in any position of PIRC Team Leader.  Rather, she assumed PIRC team leader duties on an "acting" basis, and this occurred in 2002. Plaintiff's Exh. A, ¶ 16.

Second, beyond her conclusory affidavit, plaintiff points to no evidence that she was assigned to perform all of the duties performed by Ms. Greenfield.  For example, Ms. Greenfield testified that she had responsibility for various programs within Goals 2000, not just for PIRC.  Def. Exh. 6 at 39.  The memorandum seeking an accretion of duties promotion to a GS-14 for Ms. Greenfield's position lists Ms. Greenfield as responsible for three different programs administered by the office, only one of which was PIRC.[1]  Def. Exh. 10.  Plaintiff points to no evidence that she performed the non-PIRC-related responsibilities performed by Ms. Greenfield.  See generally Plaintiff's Opp.

Plaintiff next alleges that her GS-13 position description

---

[1]    Thus, plaintiff is wrong when she claims that Ms. Greenfield's position was upgraded to a GS-14 based primarily on her work on the PIRC program.  Plaintiff's Opp. at 6, ¶ 13.  The evidence is to the contrary.  See also Def. Exh. 10.

was "almost identical" to the GS-14 position description held by
Greenfield.  Plaintiff's Opp. at 7, ¶ 17.  On the contrary, the
two position descriptions show a differing level of
responsibilities.  Compare Plaintiff's Exh. C with Plaintiff's
Exh. D.  The GS-14 position requires the encumbent to serve as a
"nationally recognized authority for the assigned broad program."
Plaintiff's Exh. D.  No such requirement is found for the GS-13
position.  Plaintiff's Exh. C.  Rather, the GS-13 position speaks
to leadership on "projects," not "programs."  Id.  Indeed, a
comparison of the two position descriptions amply shows the added
level of leadership responsibility to be carried by the GS-14
position, as opposed to the GS-13 position.  Compare, e.g.
Plaintiff's Exh. C [GS 13: "Provides broad levels of advice to
managers. . ."] with Plaintiff's Exh. D [ GS 14: "Provides
consultant services to top level officials of ED. . ."].  The
same is true with respect to other aspects of the two positions,
including the complexity of the two jobs, the knowledge required,
and the level of personal contacts expected.  Id.  Plaintiff's
evidence plainly does not bear out her claim that these two
positions are virtually identical.

Plaintiff alleges that her attempts to be upgraded to a GS-
14 level were thwarted by agency managers for discriminatory
reasons.  Plaintiff notes that "positions, not individuals, may
be upgraded through an accretion of duties" and admits that

Greenfield's position was upgraded to a GS-14 through a desk audit. Plaintiff's Opp. at 6, ¶ 13; Plaintiff's Exh. A, ¶ 13. Plaintiff claims that she "repeatedly requested an accretion in duties/desk audit from the time she began the position" of acting team leader. Plaintiff's Opp. at 24, ¶ 8. This is not supported by the citation to plaintiff's affidavit. Id., citing Plaintiff's Exh. A, ¶ 44. Moreover, this claim is directly contradicted by plaintiff's deposition testimony, in which she admitted that she never requested a desk audit until 2006, Def. Exh. 14, Plaintiff's Dep. at 37, which was well after the filing of her EEO Complaint in this case. Def. Exhs. 15-16.

Plaintiff also contends that her second level supervisor, Director of Parental Options and Information [POI] John Fiegel, informed her "that the PIRC team leader position would be announced at a grade 14" but he failed o do so. Plaintiff's Opp. at 9, ¶ 22, citing Plaintiff's Exh. A, ¶ 22. Plaintiff then contradicts herself by admitting that Mr. Fiegel had merely promised "to submit a request to personnel for his 2 senior staff members (African American females) to receive compensation for the GS-14 positions." Plaintiff's Exh. A, ¶ 39.

Plaintiff contends that after she refused to sign her performance appraisal in June 2003, Mr. Fiegel told her that he would not submit the paperwork for a GS-14 PIRC Team Leader position. Plaintiff's Exh. A, ¶ 42. Plaintiff then contradicts

6

herself again and claims that Mr. Fiegel told her that he would not submit the paperwork for a GS-14 PIRC Team Leader position because she had filed an EEO complaint. Id. at ¶ 48. Plaintiff's EEO Complaint, however, was not filed until November 25, 2003. Def. Exh. 16.

Even if plaintiff's contradictory accounts concerning any promises to seek a GS-14 for her position are credited, i.e., that Mr. Fiegel refused to request a GS-14 upgrade for her because either she refused to sign her performance evaluation or because she had filed an EEO complaint, neither claim is evidence of discrimination based on race or gender.

Additionally, to the extent that plaintiff is trying to slide in the back door a claim of retaliation, by alleging that Mr. Fiegel refused to pursue a GS-14 upgrade for her because she had filed an EEO Complaint, such a claim was neither raised administratively nor was it pled in the Complaint in this case. Def. Exhs. 15-16; see generally Complaint. Therefore, not only should plaintiff's contradictory testimony be disregarded, but she should be precluded from trying to raise any retaliation claim in her opposition brief.

Plaintiff discusses at some length the alleged deficiencies of James Guitard, assigned to the PIRC team. Plaintiff's Opp. at 4, ¶ 7; at 7-8, 19. Plaintiff concedes that some of her information is based on "rumors." Id. at 7-8, ¶ 19. Plaintiff,

however, points to no evidence that she was asked to perform work assigned to Mr. Guitard that warranted upgrading her position to a GS-14. See generally Plaintiff's Opp.

Plaintiff complains that her supervisor, Steven Brockhouse, did not perform substantive work in the PIRC program and deferred to her to perform the work on that team. Plaintiff's Opp. at 10, ¶ 24. Although the level of Mr. Brockhouse's participation in the PIRC program is disputed, this is not a material fact. It is undisputed that Mr. Brockhouse was responsible for supervising two programs -- PIRC and the Magnet School Program (Plaintiff's Opp. at 7 ¶ 18) -- and under such circumstances it is reasonable to expect employees working in those two programs to do the substantive work for their respective programs.

Plaintiff alleges that she had the same duties as other team leaders employed at the GS-14 level or above and that she was given mandatory assignments usually given to GS-14 employees. Plaintiff's Opp. at 11-12, ¶¶ 28, 30. As support, plaintiff relies primarily on her conclusory self-serving declaration. Id. With respect to two individuals she identifies -- Madeline Baggett and Diane Austin -- plaintiff does not even attempt to identify the duties performed by these two individuals, let alone try and compare them in level of responsibilities to the duties she alleges that she was performing. Id. at 12, ¶ 30.

With respect to Mr. Brockhouse, plaintiff relies heavily on

8

certain testimony from an employee working in a different program
in OII –- Richard Kress – who testified that he believed that
plaintiff performed duties comparable to Mr. Brockhouse.
Plaintiff's Exh. N at 8.  Such a claim, however, conflicts with
plaintiff's own admission that Mr. Brockhouse was supervising six
people in two different programs, Plaintiff's Opp. at 7 ¶ 18, a
claim plaintiff does not make about herself.

     Plaintiff also discusses her illness and the death of her
father, her desire to work at home, and the agency's refusal to
give her a computer to work at home after granting her request
for telework.  Plaintiff's Opp. at 12, ¶ 31; at 16, ¶¶ 43-44.
This appears to be a claim for a failure to accommodate a
disability.  Id.  This case, however, has been brought only under
Title VII.  See Complaint.  Since plaintiff has not sued under
the Rehabilitation Act, she should not be allowed to raise such a
claim now.  To the extent this claim is part of plaintiff's
hostile work environment claim, plaintiff points to no evidence
that other individuals working at home similarly situated to her
were given agency computers to use at home.  Id.  In fact, the
undisputed evidence is that they were not.  Def. Exh. 9, Sworn
Declaration of Margo Koines Anderson, at 4-5.

     In connection with plaintiff's 2003 performance appraisal,
plaintiff states that she assembled an incomplete list of her
accomplishments.  Plaintiff's Opp. at 12, ¶ 31.  According to

plaintiff she was told by Mr. Fiegel that in light of her
father's death, he and Mr. Brockhouse would "put her performance
indicators together for the evaluation."  Id. at 13, ¶ 31.
Plaintiff alleges that she was then rated on an incomplete list
of her accomplishments.  Id. at 13, ¶ 32.  Mr. Fiegel, however,
testified that he was familiar with plaintiff's work and rated
her on his knowledge of her performance.  Def. Exh. 5 at 51-52.
At most plaintiff has alleged that this knowledge was incomplete
in her opinion, but she points to no evidence that this was the
product of discrimination.

Plaintiff's factual section raises other claims which
defendant does not address here because they are not material to
the issues before this Court, with the exception of her
allegations relating to her hostile work environment claim, which
is addressed infra at 24-25 .  Rather, the issues presented in
defendant's dispositive motion concern the only claims properly
before this Court and, with respect to those, plaintiff has
failed to present evidence upon which a reasonable trier of fact
could find in her favor.

## ARGUMENT

I.    Plaintiff May not Raise New Non-Exhausted
      Claims of Discrimination.

Federal employees are required to exhaust their
administrative remedies before seeking to advance a claim of
discrimination in court.  42 U.S.C. § 2000e-16(c).  The Court of

Appeals for this Circuit in <u>Bowden</u> v. <u>United States</u>, 106 F.3d 433, 437 (D.C. Cir. 1997), made clear that plaintiffs alleging discrimination "must timely exhaust these administrative remedies before bringing their claims to court." Subsequently, the Supreme Court in <u>National Railroad Passenger Corp.</u> v. <u>Morgan</u>, 536 U.S. 101, 110 (2002), held that "[a]bsent equitable tolling, a party must comply with exhaustion requirements "or lose ability to recover . . . ." Even more recently, the Supreme Court in <u>Ledbetter</u> v. <u>Goodyear Tire & Rubber Co., Inc.</u>, 127 S. Ct. 2162, 2166-67 (2007), reiterated that an employee may not challenge in court an unlawful employment practice that has not been the subject of a timely EEO claim. <u>Id</u>. The fact that a discriminatory act occurring outside the charging period has effects felt by the employee during the charging period does not provide a basis for pursuing a claim concerning a discrete discriminatory act. <u>Id</u>. at 2167.

Under 29 C.F.R. § 1614.105(a)(1), a federal employee "must initiate contact with a [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." A discrete act alleged to be discriminatory occurs on the date the act takes place. <u>Morgan</u>, 536 U.S. at 110; <u>Akonji</u> v. <u>Unity Healthcare, Inc.</u>, 2007 WL 1207194, *5 (D.D.C. Apr. 24, 2007( (JDB). Plaintiff first sought EEO counseling on July 26, 2003. Def. Exh. 15. Therefore, any discrete act claims by plaintiff

11

occurring prior to June 10, 2003, have not been properly exhausted and are barred from being raised now, especially in an opposition brief.  See Ledbetter, 127 S. Ct. at 2166-67; Bowden v. United States, 106 F.3d at 437.

Plaintiff alleges that she was appointed Acting Team Leader for the PIRC in December 2002, when the PIRC was transferred to the newly formed OII during a reorganization.  Plaintiff's Exh. A, ¶¶ 15-16.  Plaintiff further alleges that at that time former PIRC Team Leader Greenfield turned over to plaintiff, and plaintiff assumed, all of the responsibilities and work associated with being the PIRC Team Leader.  Id.  Plaintiff, however, did not seek EEO counseling within 45 days of that event.  Def. Exh. 15.  Thus, even if plaintiff was given GS-14 level duties to perform when she became Acting Team Leader in 2002, which is unsupported by the evidence as explained below, see infra at 14-19, she did not timely file a claim of discrimination concerning that assignment.  Consistent with the Supreme Court's decision in Ledbetter, the fact that plaintiff may have continued to perform such duties within 45 days of her seeking EEO counseling does not give rise to a timely claim of discrimination, since the continued performance of those duties is but an effect of the action taken to assign her those duties, and that action was taken outside the 45-day charging period.

Thus, with respect to plaintiff's claim before this Court

concerning an upgrade to a GS-14 position, the only claim properly before this Court is any assignment of GS-14 duties occurring between June 10, 2003 and July 26, 2003, the 45-day window for plaintiff to file a claim.  See Nurriddin v. Goldin, 382 F. Supp.2d 79, 93 (D.D.C. 2005 (JDB) (Morgan bars recovery for acts occurring after the filing of an administrative complaint if the plaintiff presents the acts for the first time in court).

Plaintiff also raises allegations about the amount of certain bonuses she received as compared to those received by other employees.  Plaintiff's Opp. at 17-19, ¶¶ 50-54.  These claims are not properly before this Court because plaintiff did not raise this issue in her administrative complaint.  Def. Exh. 16.  Moreover, her allegations in this area also cover bonuses awarded in 2004 and 2005, Plaintiff's Opp. at 18, ¶ 52, a time period well past when she first sought EEO counseling in July 2003, and thus recovery is barred under the Morgan doctrine. Nurriddin v. Goldin, 382 F. Supp.2d at 93.  Accordingly, claims concerning awards and bonuses are not properly before the Court.

Plaintiff is limited to pursuing the claims that she timely exhausted at the administrative level.  Her attempt to expand upon those claims in her opposition brief should be rejected.

II.   Defendant is Entitled to Summary Judgment
      On Plaintiff's Claims of Discrimination.

Plaintiff repeatedly asserts throughout her brief that she

performed grade 14 work while assigned and paid at the grade 13 level.  See, e.g., Plaintiff's Opp. at 28.  She does not, however, identify any GS-14 work assigned to her 45 days before she sought EEO counseling on July 26, 2003.  Under the Supreme Court decisions in Morgan and Ledbetter, therefore, her claim concerning a GS-14 position must fail.  Nonetheless, the evidence also does not support such a claim.

Plaintiff's mere conclusory opinion that she was performing grade 14 level work is insufficient to establish a disputed issue of material fact.  See Holcomb v. Powell, 433 F.3d 889, 899 (D.C. Cir. 2006) (rejecting plaintiff's conclusory allegations and those without evidentiary support).  The same is true of her reliance on the opinion of Richard Kress, a colleague in a different program than plaintiff for whom no expertise in position classification is asserted.  Plaintiff's Exh. N. Similarly, plaintiff's reliance on the opinion of Shelton Allen that she was performing the work of a GS-14 is likewise misplaced.  Plaintiff's Opp. at 41 & Plaintiff's Exh. B at 152-54.  Mr. Allen's affidavit gives no indication of the factual basis for his conclusory assertion that plaintiff was "basically performing the work of a GS 14" employee.  Plaintiff's Exh. B at 153.

Plaintiff points to no evidence from anyone with any expertise in the area of position classification to support her

14

claim that she was performing grade 14 level work.  See generally Plaintiff's Opp.  Rather, plaintiff merely relies principally on the argument that she assumed all of the duties of Daisy Greenfield, who was the Team Leader for the PIRC before it was moved to OII and who was promoted to a GS-14 through an accretion of duties.

Defendant demonstrated in her opening brief that Ms. Greenfield was promoted to a GS-14 level in large part due to her responsibilities and duties related to the Goals 2000 Office.  Defendant's Mem. at 7; Def. Exh. 6 at 34-39; Def. Exh. 10.  As explained above, that involved work on three different programs, not just the PIRC program.  See supra at 4-5.  Plaintiff offers no response to this nor does she allege that she assumed all of the duties and responsibilities that Ms. Greenfield carried for the non-PIRC programs in the Goals 2000 Office.  See generally Plaintiff's Opp.  Rather, plaintiff's sole claim is that she allegedly assumed Ms. Greenfield's PIRC Team Leader duties.

Plaintiff's extensive discussion of the duties she performed as the Acting Team Leader for the PIRC, Plaintiff's Opp. at 28-36, and her lengthy exhibit of work assignments allegedly performed, Plaintiff's Exh. AA, misses the mark.  The same is true for her reliance on OPM Guidelines that require an agency to compensate an employee if the employee is given higher graded duties for more than 120 days.  Plaintiff's Opp. at 36-37.  The

15

issue for summary judgment is not whether she performed all of
the duties alleged -- an issue in dispute between the parties --
but whether the performance of such duties required her position
to be classified at the GS-14 level because they constituted
higher graded duties and whether the failure to do so was the
product of discrimination.  Plaintiff has provided no competent
evidence that the duties she performed warranted an upgrade of
her position to the GS-14 level.

    Plaintiff's claim that her GS-13 position description "was
almost identical to the job description of the GS-14 position
held by Daisy Greenfield" and that she was performing all of the
duties in the GS-14 position description is factually wrong.
Plaintiff's Opp. at 24, ¶ 6, at 38 & Plaintiff's Exhs. C & D.  As
explained above, the GS-13 and GS-14 position descriptions are by
no means virtually identical.  See supra at 5-6.  As to the
duties set forth in the GS-14 position description, plaintiff
does not provide evidence that she performed all of the duties in
the GS-14 position description.

    For example, plaintiff did not demonstrate that she provided
"consultant services to top-level officials of ED, State and
local agencies institutions and organizations."  Compare
Plaintiff's Exh. D with Plaintiff's Opp. at 28-36.  Plaintiff did
not demonstrate that she had expert knowledge to "plan, evaluate,
and advise on OESE programs, their requirements and problems."

16

Id.  Plaintiff did not demonstrate that she had contacts "generally with high-level officials from outside ED" which would "include heads of State and local education agencies, key officials of other Federal agencies and educational institutions, leaders of major educational organizations, and congressional staff members."  Id.  Thus, plaintiff failed to demonstrate that she performed all of the duties set forth in the GS-14 position description.

Plaintiff further argues that "all team leader positions are at the 14 level or above."  Plaintiff's Opp. at 38.  Plaintiff points to Ms. Greenfield, Mr. Houser, Mr. Kearn and Mr. Brockhouse as being "in team leader positions and compensated at the 14 or above level."  Id.

In order to raise an inference of discrimination based on a comparison of the agency's treatment of plaintiff and other employees who belong to different race or age groups, the plaintiff must show herself to be otherwise comparable in terms of the characteristics relevant to plaintiff's circumstances. See, e.g., Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) ("In order to show that she was similarly situated to the male employee, Neuren was required to demonstrate that all of the relevant aspects of her employment situation were 'nearly identical' to those of the male associate" whom she proffered as a comparator) (emphasis added).  See also

17

<u>Holbrook</u> v. <u>Reno</u>, 196 F.3d 255, 261-62 (D.C. Cir. 1999) (employees in same position were not similarly situated where some were probationary but others were past the probationary period). Plaintiff's theory of discrimination based upon comparator evidence fails because her circumstances were not similar to Ms. Greenfield, Mr. Houser, Mr. Kearn and Mr. Brockhouse.

Plaintiff's attempt to compare herself to Ms. Greenfield fails, as explained above, because Ms. Greenfield was performing duties other than those associated with the PIRC when she was upgraded to the GS-14 level. Moreover, Ms. Greenfield is an African American female. Even if the duties performed by Ms. Greenfield were exactly the same as those performed by plaintiff, the failure to reclassify plaintiff's job at the GS-14 level could not be evidence of discrimination based on race and gender, given the fact that both individuals are African American females.

With respect to Mr. Brockhouse, he was hired as a deputy director, Plaintiff's Exh. A, ¶ 21, a title plaintiff does not claim to have held, and it is undisputed that he was responsible for overseeing both the PIRC team and the Magnet Schools Assistance Programs team. <u>Id</u>. at ¶ 18. Plaintiff, by contrast, claims to have been responsible for only one team -- PIRC. Thus, her attempt to point to Mr. Brockhouse as a comparable employee

18

is without merit.

The same is true for Mr. Houser and Mr. Kearn.  Plaintiff's
Opp. at 38.  Plaintiff makes no attempt to describe the duties
and responsibilities of these two individuals.  Id.  Mr. Houser
was a GS-15 team leader in a highly complicated financial
management program who is responsible for two highly complex
programs.  Def. Exh. 5 at 44.  Mr. Kearn was hired into the
agency at the GS-14 level, unlike plaintiff.  Id. at 45;
Plaintiff's Exh. A at 18-19, ¶ 53.  He is the Director of the
Public Charter Schools Program; not a team leader.  Def. Exh. 4
at 45.  Thus, plaintiff's attempts to point our comparators
encumbering GS-14 level positions fails for want of a proper
comparison.

In her lengthy discussion of her job duties plaintiff fails
to grasp that the issue is not about what kind of responsibility
she had for the PIRC team but whether those responsibilities,
alone, warranted her position being classified at the GS-14 level
and, if so, whether the failure to do so presents any evidence of
discrimination.  Plaintiff has failed to produce evidence that
shows that the duties she claims to have been performing
justified classification of her position at the GS-14, and thus
the failure to upgrade her position cannot reasonably be thought
to be the product of discrimination.

At most, plaintiff has shown that she believes that she was

19

treated differently than another African American female -- Daisy
Greenfield.  Such a comparison cannot overcome summary judgment
for defendant, given the undisputed evidence that Ms. Greenfield
performed significant duties for the agency that had nothing to
do with the PIRC Team and indisputably were not performed by
plaintiff.

                    B.  <u>Plaintiff's Claim Concerning Performance Appraisal</u>

     Plaintiff does not dispute that her performance appraisal
was the first one to be given to her and other employees in her
office under a new performance appraisal system, that her prior
appraisal was simply a "pass/fail" type, and that the evaluation
at issue was the first time her supervisors had had to do a
numerical rating.  <u>Compare</u> Defendant's Mem. at 19 <u>with</u>
Plaintiff's Opp. at 40.  Plaintiff also does not dispute that
everyone in her PIRC Program received the same rating she did.
<u>Compare</u> Def. Exh. 14, Plaintiff's Dep. at 55 <u>with</u> Plaintiff's
Opp. at 40-41.

     Plaintiff argues that an African American male on the PIRC
team received the same rating she did even though his performance
was significantly lower than hers.  Plaintiff's Opp. at 41.  Mr.
Fiegel explained, however, that although the overall rating was
the same, the actual score within the rating was not.
Defendant's Exh. 5 at 53.  Mr. Fiegel testified that he attempted
to scrupulously apply the new numerical appraisal system, even

when he was not satisfied with the overall rating it produced. Id. at 53-54.  Plaintiff points to no evidence that discrimination based on gender played any part in Mr. Fiegel's evaluation of her and her African American male colleague.

With respect to her race claim, plaintiff complains that a Caucasian female, Donna Hoblit, and a Caucasian male, Richard Kress, received higher performance appraisals than plaintiff although they performed less work and had less responsibility than plaintiff.  Plaintiff's Opp. at 41. This argument is specious.  Performance appraisals are not based on the amount of work performed or the level of responsibility given to an employee.  Rather, they are designed to evaluate the quality of the work the employee has been assigned to perform.  An employee at the GS-7 level performing excellent work is just as entitled to an excellent rating as an employee at the GS-15 level who is performing more complex work, involving greater responsibility, in an excellent manner.  Yet under plaintiff's theory, an employee at a higher grade, performing work requiring more responsibility, should always received a higher performance appraisal, apparently regardless of the quality of the work performed.  Fortunately, no evidence is cited to support such an unfair view of how an employee's performance of duties assigned should be evaluated.  Thus, plaintiff's reliance on the appraisals given to Ms. Hoblit and Mr. Kress is misplaced.

Plaintiff points to no evidence that the performance appraisal she received was the product of discrimination.  Mr. Fiegel in his deposition discusses at great length why he believes that plaintiff's performance appraisal was appropriate. Def. Exh. 5 at 79-108.  Plaintiff offers no evidence of pretext to rebut this.  Plaintiff's mere conclusory difference of opinion is insufficient to accomplish this.  See Holcomb v. Powell, 433 F.3d at 899, 901.

Accordingly, defendant is entitled to summary judgment on plaintiff's claim concerning her performance rating.

C.  <u>Plaintiff's Hostile Work Environment Claim</u>

Plaintiff argues that she has established the existence of a hostile work environment when: (1) Mr. Fiegel and Mr. Brockhouse refused to issue her a new position description for the GS-14 Team Leader for the PIRC program; (2) the "efforts to reprimand her when she refused to accept a disciplinary performance appraisal; (3) "the hostile treatment she received;" (4) "interference with her efforts to obtain a computer to work at home when she was ill"; and (5) "other actions."  Plaintiffs' Opp. at 42.  Those "other actions" apparently consist of claims by co-worker Richard Kress that plaintiff was "reprimanded [] publicly as someone would scold a child," that there was an attempt made to try and prevent plaintiff from obtaining an award, that plaintiff was not provided with the necessary

22

resources to perform her job, that she received "harshly worded and demeaning emails," and that she "ran the PIRC team" for three years before she was told that she was not the Acting PIRC Team Leader. Id. at 43.

Plaintiff's claims are long on allegations, short on evidence, and insufficient to establish the existence of a hostile work environment. None of plaintiff's claims rise to the level of "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Barbour v. Browner, 181 F.3d. 1342, 1347-48 (D.C. Cir. 1999) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998)). At most plaintiff points to episodic conduct but even so it can hardly be considered "severe."

For example, it hardly constitutes a hostile work environment for supervisors to fail to issue a new position description, especially when from their perspective plaintiff had only been serving as an Acting Team Leader for the PIRC pending personnel processing the paperwork for Steven Brockhouse, a GS-15, who was tasked with supervising the PIRC Team. Def. Exh. 8, at 5, 7, 9-12, 55-57. The fact that plaintiff believes that she was in fact serving as the PIRC Team Leader simply points to a disagreement as to the level of responsibility she held. To hold that such a disagreement constitutes "harassment" would bring

23

virtually every personnel conflict between a subordinate and
superior under the umbrella of "harassment," a result clearly not
intended by the Supreme Court.  Harris v. Forklift Sys., Inc.,
510 U.S. 17, 21-23 (1993).  The same is true for plaintiff's
receipt of an email telling her that she did not hold a title
that she believed she did.  See Plaintiff's Opp. at 43, quoting
Plaintiff's Exh. V.

    The holds equally true for plaintiff's remaining claims of
hostile work environment.  Plaintiff argues that efforts were
made to reprimand her when she refused to accept what she
believed to be a discriminatory performance appraisal.
Plaintiff's Opp. at 43.  In particular, plaintiff claims that Mr.
Brockhouse directed another employee to criticize plaintiff in a
staff meeting, and to exclude plaintiff from a peer award.
Plaintiff's Opp. at 20, ¶ 55.  Even if true, which defendant
disputes, such actions do not rise to the level of a hostile work
environment.  Such actions are not threatening or humiliating nor
do they unreasonably interfere with an employee's work
performance.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23
(1993); see Gustave-Schmidt v. Chao, 360 F. Supp. 2d 105 (D.D.C.
2004).  Rather, at most they constitute "a few isolated
incidents" of enmity which she claims were based on her protected
status.  Such "isolated manifestations of a discriminatory
environment. . . [][do] not raise a cause of action under Title

VII." <u>Bundy</u> v. <u>Jackson</u>, 641 F.2d 934, 943 (D.C. Cir. 1981).

Accordingly, defendant is entitled to summary judgment on plaintiff's claim of hostile work environment.

Plaintiff's shot-gun approach to attacking defendant's dispositive motion is merely an attempt to cover up the fact that she cannot show that she was discriminated against with respect to her GS-13 position and her performance appraisal, nor can she show she was subjected to a hostile work environment.  Under such circumstances, defendant is entitled to summary judgment on all of plaintiff's claims.

<u>CONCLUSION</u>

Accordingly, for the reasons set forth above, summary judgment should be granted to defendant.

Respectfully submitted,

        /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


        /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


        /s/
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

25